# CASES DETERMINED

### IN THE

# SUPREME COURT OF JUDICATURE

### OF THE

## STATE OF NEW JERSEY,

### AT NOVEMBER TERM, 1860.

---

## THE STATE *vs.* WILLIAM W. TOMLIN AND ISRAEL PANCOAST.

1. An indictment for obtaining property by false pretences must show that the accused represented that certain facts existed, and that such representations caused the owner to part with his property, and must further show that the statements which induced the owner to part with his property are untrue.

2. A mere opinion or supposition that certain facts exist is not sufficient.

3. A representation to a creditor that his debtor is insolvent, and is largely indebted, and that he is possessed of only small means, and is unable to pay the debt, thereby inducing the creditor to part with his claim at a sacrifice, when in fact such representations are untrue, and the debtor is able to pay, is obtaining property under false pretences, for which an indictment will lie.

---

On demurrer to indictment for obtaining goods under false pretences.

The indictment was removed to this court from the Gloucester Oyer and Terminer.

This indictment charges that one Glendy was an owner

and possessor of a certain promissory note for $5200, and also of a check for $2000, both given by Tomlin to Glendy ; that, on January 9th, 1858, at, &c., the defendants, intending to defraud Glendy, &c., " did then and there, knowingly and designedly, falsely represent and pretend to Glendy that the said Tomlin *was insolvent, and largely indebted to divers persons, and was possessed of only a small estate, means, and property, and unable to pay the said Glendy the aforesaid promissory note and check," &c. ;* that Pancoast was a man of large estate, &c., and would give him (Glendy) as much as the same was worth, considering the insolvent circumstances of Tomlin, &c. ; that Glendy, believing, &c., transferred the same to Pancoast for $2500 ; all which, &c., defendants knew to be false ; and the indictment then avers that "the said Tomlin was not insolvent, was not largely indebted to divers persons, was not possessed of only a small estate and means, and was not unable to pay the said Glendy," &c., by color, &c., the said defendants did then and there obtain the promissory note and check aforesaid, &c.

*Carpenter* and *Browning,* for defendants.

The alleged false pretences in this case is simply an allegation by the defendants that Tomlin was *insolvent.* All barely amount to that, for the phrases, that he was largely indebted, was possessed of only small means, and unable to pay the note and check, amount to this, and no more.

Are these allegations, if false, false pretences within the meaning of our act ?

See act respecting crime, § 52, *Rev. Stat.* 272, *Nix. Dig.* 170, in which section is embodied the English statutes of 33 *Hen.* 8, *c.* 2, and 30 *Geo.* 2, *c.* 24.

To constitute the offence there must be (1) an intent to defraud, (2) an actual fraud committed, (3) by means of *false pretences.*

It cannot now be denied that *verbal* allegations may be sufficient to constitute the offence.

The word "pretence" is defined by lexicographers to be a holding out or offering to others something false or feigned—a false show or appearance. A *false* pretence seems to be a pleonasm, but conveys the idea of some false show or appearance offered for the purpose of fraud and intended to deceive.

However broad or strong the expression, the statute does not mean to make any lie by which credit is gained, an indictable offence. It has always been held that the statute does not go to this extent, but that the true construction of the act renders some restriction necessary to the advantageous execution of the statute.

Thus it has always been held that a bare naked lie, not appealing to any supposed plausible circumstance calculated so deceive, is not indictable. It therefore involves contrivance—must refer to something calculated to deceive. *Vanderbelt's case*, 3 *Dutcher* 334 ; *People* v. *Williams*, 4 *Hill* 9.

So always held that a misrepresentation in relation to a *future transaction* cannot be a statutory false pretence. It must be an *alleged existing fact*. *Rex* v. *Goodall, Russ. & Ryan* 461 ; *Commonwealth* v. *Drew*, 19 *Pick*. 185, and cases; 3 *Dutcher* 334 ; *Dillingham* v. *State*, 5 *Ohio* (*N. S.*) 280.

So an expression of opinion as to a supposed fact will not amount to a false pretence—as to which cases will be cited below.

The words of the statute are restrained by construction from their broadest sense upon principles which cannot now be controverted. There is a limit somewhere not yet definitively settled. The weight of authority, it is admitted, goes thus far, that no bare naked lie not calculated to deceive, no representation as to a future transaction, nothing that amounts only to an expression of an opinion, constitute a false pretence under the statute.

I submit that the false pretence meant by the statute therefore is, a false representation which involves contrivance, as that it must falsely and fraudulently invoke the credit of some third person, or falsely claim some *status*

entitled to credit, or refer to some other supposed specific extrinsic source of credit. In all cases the false representation must refer to or be connected with some supposed existing fact calculated to deceive. It must be not a matter of opinion, but an allegation of a supposed existing fact.

Now a general allegation as to the wealth or insolvency of a person must always be a matter of opinion. Unless based on alleged facts, it is necessarily a mere matter of opinion.

An allegation in an indictment, that a man is very rich, or that he is insolvent, would be satisfied by proof of a mere expression of opinion.

*Vanderbelt's case*, 3 *Dutcher* 328, lately decided in this court, is consistent with this view and with the weight of authority from the case in 3 *Term Reports* to the present time. That case was no bare general allegation as to the means of the party, but the representation contained an express reference to an alleged specific extrinsic source of credit. The defendant falsely alleged that he was a farmer, living on a farm particularly referred to, *well stocked;* that he had *planted* 50 *acres of corn;* that he had *all kinds of farming utensils;* that *he owned* 10 *acres* of land near Asbury; that he owned a tavern stand in the village, &c. The defendant declared himself to be a man of substance and of supposed specific property, as the ground of the credit claimed.

Suppose the defendant had bought two horses, simply alleging at the time that he was a man of substance; that he was not largely indebted; that he was not possessed of only a small estate, and that he was able to pay for the horses —the exact converse of this case—the indictment in such case could not have been supported.

There is great looseness in the *dicta*, but the leading cases are all consistent with this view.

In *Williamson's case*, 3 *T. R.* 105, it was the supposed position of trust under the Duc de Lauzun that gave the defendant credit.

State v. Tomlin.

In *Young's case*, 3 *T. R.* 98, there was the pretence of a bet of 500 guineas with a colonel in the army, in which the dupe was induced to take a part, and 20 guineas were thus obtained from him.    In both these cases the pretences were artful but false allegations of extrinsic facts calculated to deceive.

The giving a *check* with no funds has rightly been held a false pretence.    It is an artful contrivance; it implies, without words spoken, that it is drawn on funds; it is an appeal to a supposed alleged ground of credit.    See *Rex* v. *Jackson,* 3 *Campb.* 379; *Commonwealth* v. *Drew,* 19 *Pick.* 186.

So other allegations in regard to means, in every case there being a reference to some specific supposed facts to sustain the general allegation.    *People* v. *Haynes,* 11 *Wend.* 557; *Commonwealth* v. *Burdick,* 2 *Barr* 163; *Reg.* v. *Henderson,* 1 *C. & Marsh* 328; *Commonwealth* v. *Henry,* 10 *Harris* 253; *Johnson's case,* 12 *Johns.* 292.

Two cases lately decided in England, at first sight, seem inconsistent with each other, but they are in fact consistent with each other and with the rule I have stated—the latter being a mere matter of opinion.

In one, it was held that obtaining money of a pawnbroker on the pledge of spoons falsely alleged to be silver was held to be indictable.    *Reg.* v. *Roebuck,* 36 *Eng. Law and Eq.* 631.

In the other, upon a false allegation as to the quality of plated spoons was held not to be indictable.    *Reg.* v. *Bryan,* 40 *Ib.* 589.

So in a late case in Essex Oyer, (May Term, 1860,) Justice Whelpley quashed an indictment, as not within the statute, in which the false representation was that a horse was sound, when, as averred, he was unsound (foundered.)    State *v.* Vancleve.

So the allegation to an employer, that more money was due than in fact was due, by which money was obtained,

was held not to be sufficient. That it was not an allegation of an existing fact, strictly speaking, but one that *might* be answered by evidence of *mere matter of opinion*. *Reg.* v. *Oates*, 29 *Eng. Law and Eq.* 552.

It is extremely questionable whether, on other grounds, no credit being sought, this case comes within the statute, but it is submitted that, as a mere general expression of opinion, and not a distinct allegation of existing facts, the indictment cannot be supported. No case of well-decided law will support this indictment, and safety of society requires that the doctrine should not be extended.

*Dayton*, Attorney General, and *P. D. Vroom*, for state.

The indictment is founded on the 52d section of the act for the punishment of crimes. *Nix. Dig.* 170, *pl.* 52.

All persons who knowingly and designedly, by color of any false token, counterfeit letter or writing, or false pretence or pretences, shall obtain from any person money, wares, &c., with intent to cheat or defraud any person or persons, then any person so offending shall be deemed guilty, &c.

It was formerly held that there must be some false or counterfeit token or writing to sustain an indictment; that a false verbal representation was not sufficient, and that a false pretence meant something more.

Such has been the ruling in the Oyer and Terminer, in several cases, down to 1844.

But the Supreme Court, in 1859, held, on a full consideration, that false tokens were not necessary. 3 *Dutcher* 328, *State* v. *Vanderbelt*.

The statute comes in aid of the moral law, and courts are not called on to explain it away, and thus defeat its intention.

Four things are necessary in an indictment under this section of the act.

1. The pretence charged must relate to an existing fact, and not a mere opinion.

State v. Tomlin.

2. It must not be absurd or incredible, but calculated to mislead.

3. An intent to cheat must be distinctly charged, and—

4. That an actual fraud and injury was committed.

These matters are all sufficiently stated.

1. The fact or facts, as connected with the false pretence are, that Tomlin was insolvent; that he was largely indebted; that he was unable to pay his debts, and unable to pay the note and check.

These are facts capable of direct and clear proof. In what way they are to be proved is not now a question.

Insolvency is considered in law as a fact that may be clearly established. The law speaks of "insolvent debtors," "insolvent estates," "insolvent corporations," &c.

An important part of our statute law is founded on the principle that *insolvency* is a *fact*, and not a mere *opinion*.

If the indictment had charged that the defendants expressed their opinions in regard to the insolvency of Tomlin, it would not have been sufficient.

An indictment charged that defendant falsely pretended that a horse was sound, and that he himself was a farmer at O., &c. The defendant was convicted. The soundness or unsoundness of a horse is often considered peculiarly a matter of opinion.

The other false pretences charged are of facts susceptible of proof.

The argument on the other side is, that there is no extrinsic matter alleged in aid of the false allegation. That is simply the old idea, which this court has discarded.

2. The allegations in the indictment are sufficiently negatived.

It is not necessary to negative all the alleged pretences, nor prove to be false all that are negatived. 2 *Parker's C. R.* 139, *Skiff* v. *People.*

3. As to the statement of false pretences in the indictment, see 2 *Russ. on Crimes* 305.

Part of the pretences may be insufficient, or a part may not be proved, and yet the conviction will be good.

Not necessary that all the pretences should be false.  2
*Russ.* 309; *Ibid.* 310, *Rex* v. *Dale, in notes.*

OGDEN, J. The indictment was removed by *certiorari*
into this court from the Oyer and Terminer of the county of
Gloucester.  The counsel for the defendants have contended
that the indictment is defective in form and substance, and
that judgment of conviction could not lawfully be pronounced
upon it.  The section of our statute for the punishment of
crimes, upon which this prosecution is based, has lately
undergone a careful consideration in this court, and the terms
used therein have received a judicial construction.  If, there-
fore, the indictment before us is in form and substance
within the principles of the rulings made in that case, our
judgment should be against the demurrer.  The 52d section
of the act provides that "all persons who knowingly and
designedly, by color of any false token, counterfeit letter or
writing or false pretence or pretences, shall obtain from any
person money, wares, merchandise, goods or chattels, or
other valuable thing, with intent to cheat or defraud any
person or persons, body politic or corporate, of the same,
then every person so offending, shall be deemed guilty of a
misdemeanor."

In the case of *The State* v. *Vanderbelt and Duckworth,*
already referred to, to be found in 3 *Dutcher* 328, the prin-
cipal authorities cited on this argument were consulted,
and it was decided by the full bench, then sitting, that for
bringing a case within the statute, it was not necessary
that a false token of a visible thing, either public or pri-
vate, should be used ; but that any false pretence, not absurd
and incredible in itself, sufficient to impose upon the indi-
vidual to whom made, and thereby induce him to part with
his property, is an offence within the statute, if it be used
with an intent to cheat and defraud, and accomplishes the
object aimed at.

The court then considered and declared it to be true
policy neither to restrain the interpretation of the statute

within too narrow limits nor to explain it away to the encouragement of frauds. They designed to take the middle ground between pretences which were mere palpable falsehoods and irrational assertions and those which are evidenced by a visible token, and thus to determine the technical meaning of the term *false pretence,* when used as legal language. It was held, in that case, that the pretence must refer to an existing fact; that it must not be promissory in its character, but must be a representation of something which at the time is untrue.

The court also decided that all the pretences set out in an indictment need not be proved and negatived as laid, if sufficient are proved false to subject a defendant to a conviction. The introduction of defective or superfluous pretences in an indictment, if it would be valid without them, cannot vitiate others which are good.

Having thus re-stated the substance of the decision made in the case of Vanderbelt and Duckworth, the validity of the indictment under examination can be more understandingly tested. It sets out that Tomlin and Pancoast, knowing that one Glendy was the owner of a promissory note, drawn by said Tomlin in favor of Glendy, for the sum of $5200, and also of a check given by Tomlin to him, on the 9th of January, 1858, devising and intending to cheat and defraud the said Glendy out of his note and out of his check, and out of the moneys due on the note and on the check, did unlawfully, knowingly and designedly falsely represent and pretend to him that the said Tomlin *was insolvent* and largely indebted to divers persons, and *was* possessed of only a small estate, means and property, and unable to pay said Glendy the promissory note and check; and that the said Pancoast was a man of large estate; and if he could buy of him, said Glendy, his said note and check, he would give him as much as the same were worth, considering the insolvent circumstances of said Tomlin. And it further sets out, that the said Glendy, believing the said representa-

tions and pretences to be true, and being deceived thereby, was induced to sell, and did then sell and transfer, the said note and check to the said Pancoast for the sum of $2500. It is averred, in the indictment, that the defendants then knew the representations and pretences to be false, and by proper averments, all the facts in the pretences set out in the indictment are separately negatived. The pleader then, states that by color and means of the said false representation and representations, pretence and pretences, the said defendants did knowingly, unlawfully and designedly obtain from the said Glendy the promissory note and check for a sum of money greatly below their value, to wit, the sum of $2500, to the great damage of said Glendy, &c.

Does this indictment set out sufficient (if true) to show that there was an intent to defraud, that an actual fraud was committed, and that the object was attained by the means of such false pretences as have already been ruled by this court to be within the prohibition of the statute?

The whole argument in support of the demurrer was made upon the character of the pretences used. Having assumed, as an established proposition, that the pretence meant in the statute must state some existing fact calculated to deceive, and not the expression of an opinion as to a supposed fact or a representation as to a future transaction, it was insisted that a representation of the insolvency of Tomlin must necessarily have been a matter of opinion, and not the statement of an existing fact. The case must turn upon the settlement of this objection to the indictment.

If the contrivance made use of to get possession of the note and check for a consideration far below their value was the mere expression of an opinion upon an uncertain fact, then the demurrer should be sustained. And, on the other hand, if the representation states material matters of fact respecting Tomlin's ability, and not a supposition or an opinion, and the pretence be knowingly un-

true, then the demurrer should be overruled. The charge in the indictment is, that the defendants knowingly, designedly, and falsely did represent and pretend to Glendy that Tomlin (one of the defendants) *was insolvent* and *largely indebted to divers persons,* and *was possessed of only small means,* and *was unable* to pay to Glendy the full amount of the two debts which he owed to him.

Three matters are embraced in the representation. 1st. That Tomlin *was insolvent.* Is not that the statement of a fact? Was not his solvency or insolvency a then existing fact? Can the positive declaration of that fact by the defendants be held to be a mere conjecture or uncertain opinion?

The second matter within the representation is, that he was largely indebted. Is not the extent of a person's indebtedness at a given period of time a fact, and not a future contingency? And is not an averment that a person *is* largely indebted the affirmative statement of an existing fact?

So, also, with regard to the other matters embraced in the representation respecting the debtor's means and his inability to pay his indebtedness. The *status* of the debtor is a fact; and he who unqualifiedly undertakes to declare what such *status* is represents a fact, and does not express an opinion merely. He refers to a present, and not to a future event; he *states* a present condition, not a probability to be made certain by the future. By reversing the order of the representations, and examining them separately, we shall have the case precisely as the counsel for the demurrants contended it should be for constituting a valid indictment upon the statute.

If the defendants had only been charged with having falsely represented to Glendy that Tomlin was unable to pay him the promissory note and check, and that the said Glendy was thereby induced to part with his property at a great sacrifice, we should have had before us a naked assertion, which if untrue would have been a simple lie,

But when the facts upon which the assertion was made are set forth ; when, as a reason in support of the statement, it was said that he was *insolvent*, and was largely indebted to divers persons, and *was* possessed of only a small estate, means, and property, it seems to me that every fact which would naturally have created an existing certain inability to pay so large an amount to Glendy was presented to his mind as motives for him to part with his evidences of indebtedness at an unconscionable sacrifice. Should this court require more particularity in statements ? I do not see that in a case of this nature anything short of an inventory and valuation of the debtor's estate and a schedule of his indebtedness would come up to the principle, which requires that particular circumstances should be set forth to enable a court to determine whether or not the false pretences amount to an indictable offence.

But it was also aruged that the bare statement by a person of his own responsibility, however false it may be, is not within the statute—that such statement discloses no artifice and contrivance, and does not use any extrinsic circumstance as a medium of deception. The authorities on which this part of the argument was placed are those wherein persons had obtained credit on representations of their perfect ability to pay at the end of the credit which they sought. This case is strictly the reverse: the two defendants are charged with going to the prosecutor, and pretending to him that his debtor, Tomlin, was unable to pay him, and also with stating that Pancoast was a man of large estate, and would buy up the indebtedness of Tomlin, if it could be obtained at a reduced price. The credit of Pancoast was used by Tomlin to induce the prosecutor to part with the note and check, and the pretended insolvency of Tomlin was used by Pancoast to get possession of the note and check at less than half of their nominal values. They are charged in the indictment as joint actors in perpetrating the fraud, and when shown to be in privity, each must be bound by the consequences of

the part which the other performed in practising the deceit.

The indictment is framed upon the statute. It sets out the pretences which were used designedly to perpetrate the fraud; it states several circumstances why the false pretences should be taken as true; it negatives all the facts relied on in the pretences; it avers that the stratagem and contrivance induced Glendy to part with the possession of his note and check, and it follows the language of the statute in setting out the offence as closely as proper pleading would permit.

My opinion is that the case comes fully within the decision of this court in 3 *Dutcher*, and that the demurrer should be overruled, and the defendants be required to plead over the indictment, so that it may be carried down to the next term in the Circuit Court of Gloucester for trial.

HAINES, J., concurred.

VAN DYKE, J., dissented.

CITED *in State* v. *Thatcher*, 6 *Vr.* 453.